UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

DONOVAN YOUNG,

    Petitioner,                                      Civil Action No. 16-CV-10841

v.                                                HON. BERNARD A. FRIEDMAN

JEFFREY WOODS,

    Respondent.
_____/

**OPINION AND ORDER DENYING THE PETITION FOR WRIT
OF HABEAS CORPUS, A CERTIFICATE OF APPEALABILITY,
AND PERMISSION TO APPEAL IN FORMA PAUPERIS**

This matter is before the Court on the petition of Donovan Young for a writ of habeas corpus under 28 U.S.C. § 2254. Young was convicted after a jury trial in the Wayne Circuit Court of first-degree murder, Mich. Comp. Laws § 750.316, assault with intent to commit murder, Mich. Comp. Laws § 750.83, and possession of a firearm during the commission of a felony, Mich. Comp. Laws § 750.227b. Petitioner was sentenced to a controlling term of life imprisonment without possibility of parole for the murder conviction and lesser terms for the other convictions.

Petitioner raises five claims: (1) the prosecutor withheld exculpatory evidence by failing to list two people on its witness list that would have testified favorably to the defense; (2) petitioner was denied the effective assistance of counsel for failure to move for separate trials from petitioner's co-defendant; (3) the prosecutor committed misconduct at trial; (4) petitioner was denied the effective assistance of counsel when his trial attorney failed to request a felonious assault instruction; and (5) petitioner confrontation rights were violated when the trial court ruled that he could not recall a prosecution witness for additional cross examination.

# I. BACKGROUND

Petitioner was tried jointly with his co-defendant, Kevin Craig, in relation to a fatal shooting in Detroit. This Court recites verbatim the relevant facts relied upon by the Michigan Court of Appeals:

> Defendants' convictions arise from the shooting death of Antonio Turner and nonfatal gunshot injuries to Darneil Richardson on June 12, 2011, on Sorrento Street in Detroit. Richardson and defendant Craig were rival drug dealers. Richardson testified that he encountered defendant Craig on the street and the two became involved in an argument. Turner and defendant Young also were present. According to Richardson, defendant Young pointed a .357 caliber revolver at Turner's face, said "f* *k it," and pulled the trigger, but the revolver did not discharge. Richardson then observed defendant Craig also pull out a gun. Richardson and Turner both ran off. As Richardson was running, he heard gunshots and was shot in the leg. Turner was shot three times and died at the scene.
>
> A witness, Barbara Ingram, testified that she saw defendant Craig and another man both pull out guns, which were pointed at Turner. After Turner put his hands up in the air, shooting started. Ingram briefly ducked for cover, but then looked up again and saw Turner on the ground. Defendant Craig had left, but then returned and shot Turner. Another witness, Ariel Sydes, testified that she heard a gunshot, looked outside, and saw defendant Craig, who was armed with a gun, chasing Richardson. Turner was lying in the middle of the street. Neither defendant testified at trial. Both defendants attacked the credibility of the prosecution witnesses and argued that the evidence failed to show that the two defendants were acting in concert and did not establish who actually shot the victims. . . .
>
> Viewed in a light most favorable to the prosecution, the evidence established that multiple gunshots were fired after Richardson saw defendant Young point a revolver at Turner's face and pull the trigger. Witnesses testified that both defendant Young and codefendant Craig were armed with guns. Ingram testified that she heard "a lot of gunshots." Richardson testified that he heard 15 to 17 gunshots. Sydes testified that she heard one gunshot followed by another "set" of two or three gunshots. Turner sustained three gunshot wounds. All of these events occurred outside Richardson's

> drug house, after Richardson, accompanied by Turner, had been confronted by defendant Craig, a rival seller of drugs.
>
> The evidence supported an inference that defendant Young and codefendant Craig were acting in concert outside of Richardson's drug house. Regardless of whether defendant Young was able to fire his revolver after Richardson and Turner fled, the jury could find that defendant Young's act of pointing the revolver at Turner's face and pulling the trigger was the impetus for the shooting.

*People v. Young*, No. 310435, 2014 WL 3745186, at *1, 5 (Mich. Ct. App. July 29, 2014).

These facts are presumed correct on habeas review. *See* 28 U.S.C. § 2254(e)(1); *Wagner v. Smith,* 581 F.3d 410, 413 (6th Cir. 2009):

Following his conviction Petitioner filed a claim of appeal in the Michigan Court of Appeals. The appellate brief filed by his appointed counsel raised a single claim challenging the sufficiency of the evidence. Petitioner also filed a supplemental pro se brief, raising what now form his first through fourth habeas claims. Petitioner also filed a motion to remand the case to the trial court for an evidentiary hearing on his ineffective assistance of counsel claim. The Michigan Court of Appeals granted the motion and remanded the case to the trial court to hold a hearing. *People v. Young*, No. 310435 (Mich. Ct. App. Order, Feb. 20, 2014).

At the evidentiary hearing, Petitioner's trial counsel, Lillian Diallo, and Petitioner testified. Dkt. 11-16. The trial court denied Petitioner's claim:

> Well, the claim by Mr. Young now that he would have taken the deal rather than face life without parole in prison is somewhat captious (sic) in the sense that anybody in their right mind would take such an offer if the option was to go to prison for the rest of your natural life. That aside, the decision for separate juries or one jury was mine and mine alone. And whether the Defendant understood that is of no moment. The trial would have proceeded in front of me with one jury once I was persuaded that there was no conflict. Now to say well, it would have been different if the codefendant testified or didn't testify, none of us has a crystal ball. So none of us could know whether his codefendant would testify

> or not testify. As every Defendant, including Mr. Young, has the absolute right not to testify. So the claim that Ms. Diallo was ineffective because of a ruling of mine is without merit. The motion for whatever relief Mr. Young is asking is denied. And I find that Ms. Diallo was not ineffective in her representation of him.

*Id.* at 27–28.

Petitioner's appellate counsel then filed a supplemental brief on appeal, raising the following claim:

> Was it error for the trial court judge to deny the defendant-appellant's motion for a new trial where he alleged that he would have accepted the plea and sentence agreement extended to him if he understood that his joint trial with the codefendant would be conducted before a single jury – and not before separate juries – which was contrary to his trial counsel's assurance and which denied him the effective assistance of trial counsel?

The Michigan Court of Appeals affirmed Petitioner's convictions in an unpublished opinion. *Young*, 2014 WL 3745186. Petitioner subsequently filed an application for leave to appeal in the

Michigan Supreme Court, raising the same claims that he raised in his pro se supplemental brief. Petitioner also raised what now forms his fifth habeas claim. The Michigan Supreme Court denied the application because it was not persuaded that the questions presented should be reviewed by the Court. *People v. Young*, 859 N.W.2d 516 (Mich. March 3, 2015) (Table decision).

## II. Standard of Review

28 U.S.C. § 2254(d), as amended by The Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA), imposes the following standard of review for habeas cases:

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be

> granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim–
>
> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

A state court adjudication is "contrary to" Supreme Court precedent under § 2254(d)(1) "if the state court applies a rule that contradicts the governing law set forth in [Supreme Court] cases" or "if the state court confronts a set of facts that are materially indistinguishable from a decision [of the Supreme Court] and nevertheless arrives at a [different result]." *Lockyer v. Andrade*, 538 U.S. 63, 73 (2003) (internal quotation marks omitted).

Under the "unreasonable application" clause of § 2254(d)(1),

> even clear error will not suffice. Rather, as a condition for obtaining habeas corpus from a federal court, a state prisoner must show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement.

*White v. Woodall*, ___ U.S. ___, 134 S. Ct. 1697, 1702, 188 L. Ed. 2d 698 (2014) (citations, quotation marks, and alterations omitted).

"When reviewing state criminal convictions on collateral review, federal judges are required to afford state courts due respect by overturning their decisions only when there could be no reasonable dispute that they were wrong." *Woods v. Donald*, ___ U.S. ___, 135 S. Ct. 1372, 1376, 191 L. Ed. 2d 464 (2015). "Federal habeas review thus exists as 'a guard against extreme malfunctions in the state criminal justice systems, not a substitute for ordinary error

correction through appeal.'" *Id*. (quoting *Harrington v. Richter*, 562 U.S. 86, 102-03 (2011)). "[W]hether the trial judge was right or wrong is not the pertinent question under AEDPA." *Renico v. Lett*, 559 U.S. 766, 778 n.3 (2010). The question is whether the state court's application of federal law was "objectively unreasonable." *White*, 134 S. Ct. at 1702. In short, the standard for obtaining federal habeas relief is "difficult to meet . . . because it was meant to be." *Burt v. Titlow*, ___ U.S. ___, 134 S. Ct. 10, 16, 187 L. Ed. 2d 348 (2013)(internal quotation marks omitted).

### III. Analysis

A. Procedural Default and Exhaustion

Respondent asserts that Petitioner's first, third, and fifth habeas claims are procedurally defaulted or unexhausted. Under the procedural default doctrine, a federal habeas court will not review a question of federal law if a state court's decision rests on a substantive or procedural state law ground that is independent of the federal question and is adequate to support the judgment. See *Coleman v. Thompson*, 501 U.S. 722, 729 (1991). However, procedural default is not a jurisdictional bar to review of a habeas petition on the merits. See *Trest v. Cain*, 522 U.S. 87, 89 (1997). Additionally, "federal courts are not required to address a procedural-default issue before deciding against the petitioner on the merits." *Hudson v. Jones*, 351 F. 3d 212, 215 (6th Cir. 2003) (citing *Lambrix v. Singletary*, 520 U.S. 518, 525 (1997)). It may be more economical for the habeas court to simply review the merits of the petitioner's claims, "for example, if it were easily resolvable against the habeas petitioner, whereas the procedural-bar issue involved complicated issues of state law." *Lambrix*, 520 U.S. at 525. In the present case, the Court deems it more efficient to proceed directly to the merits, because the claims may be easily resolved on the merits. Moreover, the Court is authorized to deny relief on the merits with respect to unexhausted claims.

See 28 U.S.C. § 2254(b)(2).

B. Failure to List Witnesses (Habeas Claim I)

Petitioner claims that the prosecutor hid exculpatory evidence from the defense by failing to list two res gestae witnesses who would have testified favorably to the defense, Ronell Williams and Demond Washington, on its witness list.

As an initial matter, federal law does not require the production of so-called res gestae witnesses. *Johnson v. Hofbauer*, 159 F. Supp. 2d 582, 601 (E.D. Mich. 2001). Michigan law's requirement that the prosecutors produce res gestae witnesses is simply a matter of state law whose enforcement is beyond the scope of federal habeas review. See *Collier v. Lafler*, 419 Fed. Appx. 555, 559 (6th Cir. 2011). "[U]nder federal law, there is no obligation on the part of the prosecutor to call any particular witness unless the government has reason to believe that the testimony would exculpate the petitioner." *Atkins v. Foltz*, 856 F.2d 192 (Table), 1988 WL 87710, *2 (6th Cir. Aug. 24, 1988)(citing to *United States v. Bryant*, 461 F.2d 912, 916 (6th Cir. 1972)). Thus, whether the prosecutor exercised due diligence in attempting to locate a res gestae witness and present their testimony at trial is outside the scope of federal habeas review. *Collier*, 419 F.App'x. at 559.

Furthermore, The Michigan Court of Appeals noted in its opinion that both Williams and Washington were listed on the prosecution's three-page witness list. This finding of fact is entitled to the presumption of correctness under 28 U.S.C. § 2254(e)(1), and Petitioner has not offered clear and convincing evidence to rebut it. Indeed, Respondent filed a copy of the witness list naming these two witnesses as part of the Rule 5 materia. See Dkt. 11-9.

With respect to the federal aspects of Petitioner's claim, the Due Process Clause requires the state to disclose exculpatory evidence to the defense. See *Brady v. Maryland*, 373 U.S. 83

(1963). "There are three components of a true *Brady* violation: The evidence at issue must be favorable to the accused, either because it is exculpatory, or because it is impeaching; that evidence must have been suppressed by the State, either willfully or inadvertently; and prejudice must have ensued." *Strickler v. Greene*, 527 U.S. 263, 281-82 (1999). Thus, in order to establish a *Brady* claim, the petitioner must show that: (1) evidence was suppressed by the prosecution in that it was not known to the petitioner and not available from another source; (2) the evidence was favorable or exculpatory; and (3) the evidence was material to the question of the petitioner's guilt. See *Carter v. Bell*, 218 F.3d 581, 601 (6th Cir. 2000). The petitioner bears the burden of establishing each of these three elements. See *Carter*, 218 F.3d at 601.

Petitioner has failed to demonstrate that Williams and Washington were witnesses whose identity was suppressed by the prosecution. The state court found that there were, in fact, included on the witness list notwithstanding Petitioner's allegations to the contrary. Moreover, Petitioner has failed to demonstrate that either witness had exculpatory testimony to offer. Petitioner asserts that Washington was interviewed by police at the scene of the crime by Sgt. McGinnis, but he offers nothing but speculation that Washington would have offered any testimony beneficial to his defense. The document offered by Petitioner labeled "Story" that he claims was produced by the police simply states: "The third story is told by Demond Washington who lives at 13967 Sorrento with victim Darneil. Mr. Washington stated that the reason for today's incident was some past disagreement between Darneil and Buba [co-defendant Craig]. Mr. Washington was unable to elaborate due to his emotional distress." Dkt. 11-17, at Page ID 116. This incomplete summary is consistent with the prosecutor's theory and does not exculpate Petitioner in anyway.

With respect to Ronell Williams, the police report referenced by Petitioner merely states

that Williams told police he was lying on the couch when he heard multiple gunshots. He stayed down until the shooting stopped. When asked if he saw the shooter, Williams answered "No, by the time I got up off the couch, he was gone." Id., at Page ID 118. Petitioner draws the inference from Williams use of the singular "he" that there was only one assailant. Obviously, however, because Williams stated he did not see the shooting, this was nothing more than an assumption on his or the questioning police officer's part.

Petitioner's first claim is therefore without merit.

C. Ineffective Assistance of Counsel (Habeas Claims II and IV)

Petitioner raises two sets of ineffective assistance of trial counsel claims. He asserts that his counsel was ineffective for: (1) failing to secure a separate trial from Craig, thus losing the ability to call Craig as a defense witness and causing him to reject a favorable plea deal, and (2) arguing that Petitioner was only guilty of felonious assault without requesting a corresponding jury instruction.

To establish ineffective assistance of counsel, a defendant must show both that: (1) counsel's performance was deficient, i.e., "that counsel's representation fell below an objective standard of reasonableness"; and (2) the deficient performance resulted in prejudice to the defense. *Strickland v. Washington*, 466 U.S. 668, 687-88 (1984). "[A] court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action 'might be considered sound trial strategy.'" *Id*. at 689 (quoting *Michel v. Louisiana*, 350 U.S. 91, 101 (1955)). The test for prejudice is whether "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id*. at 694.

Petitioner first claims that his trial attorney failed to secure a separate trial from Craig, thus foreclosing the ability to call Craig as a defense witness. Petitioner further claims that his counsel's erroneous advice that he would have a separate trial from Craig was the reason he did not accept a favorable plea bargain. When a habeas petitioner contends that his lawyer's bad advice caused him to reject a plea offer from the prosecution, he must show prejudice by establishing that without the bad advice, there is a reasonable probability that he would have accepted the plea offer and the prosecution would not have withdrawn it in light of intervening circumstances. *Lafler v. Cooper*, 132 S. Ct. 1376, 1385 (2012). The petitioner must also show that the court would have accepted its terms, and that the conviction or sentence, or both, would have been less severe than the sentence that in fact was imposed. *Id*.

The Michigan Court of Appeals summarized the testimony presented at the evidentiary hearing concerning this allegation:

> Defendant Young and trial counsel presented conflicting testimony on this issue at the *Ginther* hearing. Defense counsel flatly denied that the discussions regarding the prosecution's plea offers involved any consideration of whether defendant Young and codefendant Craig would have separate juries, and counsel further denied ever representing to defendant Young that there would be separate juries. According to defense counsel, defendant Young's decision whether to accept or reject the prosecution's plea offer hinged on whether a particular prosecution witness was going to testify at trial, and once defendant Young learned that the witness would not be testifying, he was insistent upon going to trial. Conversely, defendant Young testified that he rejected the prosecutor's plea offer because he was assured by defense counsel that he and codefendant Craig would have separate juries, which would allow codefendant Craig to testify before defendant Young's jury that defendant Young was not involved in the shooting. Defendant Young testified that if he had known there would only be one jury, he would have accepted the prosecution's plea offer.

*Young*, 2014 WL 3745186, at *6.

The Michigan Court of Appeals went on to reason why Petitioner's claim was belied by the records:

> First, defendant Young has not established factual support for his claim that he reasonably believed that codefendant Craig intended to provide favorable testimony if defendant Young had a separate jury. Although defendant Young testified at the *Ginther* hearing that codefendant Craig "was going to testify on my behalf if we had the separate jury saying that I wasn't at the scene" and defendant Young asserts in his brief that codefendant Craig intended to testify that only codefendant Craig was guilty, defendant Young never presented any testimony or affidavit from codefendant Craig in support of these claims. Further, these claims are inconsistent with the positions actually taken by codefendant Craig at trial, at his sentencing, and on appeal. Second, defendant Young testified at the *Ginther* hearing that the trial court ruled several months before trial, in December 2011 or January 2012, that separate juries would be allowed. There is no evidence of any such ruling by the trial court at that time. Rather, the record indicates that the court first addressed the issue of separate juries at the pretrial hearing on April 13, 2012, which was only four days before trial. Third, the record discloses that defense counsel announced on the record at the April 13 pretrial hearing that defendant Young had rejected the prosecutor's plea offers before defense counsel first orally moved for separate juries. The fact that the trial court made its pretrial ruling allowing separate juries after the plea discussions ended belies any claim by defendant Young that his decision to reject the plea offers was premised on a belief that he and codefendant Craig would have separate juries. Fourth, a need for separate juries to enable codefendant Craig to testify before defendant Young's jury was never mentioned as one of the justifications for separate juries when this issue was argued before the trial court. Fifth, defendant Young was present when both defense attorneys announced on the record on the first day of trial that they were willing to proceed with only one jury. Despite defendant Young's present contention that the availability of separate juries was the principal factor in his decision to proceed to trial, he never expressed any disagreement or opposition to defense counsel's statement. Sixth, after the prosecution rested, codefendant Craig, followed by defendant Young, both announced on the record that they were waiving their right to testify. During this exchange, defendant Young, with knowledge that codefendant Craig had elected not to testify, also expressed satisfaction with defense counsel's services.

> Considering all of these circumstances, we conclude that the record does not factually support defendant Young's claim that his decision to reject the prosecutor's plea offer was based either on incorrect advice by defense counsel, or an expectation that he would have a separate jury before which defendant Craig intended to provide exculpatory testimony. Accordingly, we reject this claim of ineffective assistance of counsel.

*Young*, 2014 WL 3745186, at *7.

This decision did not constitute an unreasonable application of the *Strickland* standard. There is no support in the record that Craig was willing to provide testimony favorable to Petitioner that he acted alone. Nor does the record support Petitioner's claim that his counsel promised him separate trials or that his decision to reject the plea deal hinged on separate trials. After the trial court finally ruled against Petitioner on his motion for a separate trials on January 12, 2012, there is nothing in the record to indicate that Petitioner wished to renew plea negotiations.[1] This allegation of ineffective assistance of counsel is not supported by the record.

Petitioner also asserts that his counsel erred by arguing that Petitioner was guilty of only felonious assault but then failed to request a corresponding jury instruction on the lesser offense. It is accurate that in defense counsel's closing argument, she argued that if he jury chose to believe Richardson's testimony that Petitioner was present at the scene, his act of pointing a gun at Turner

---

[1] The Court notes that the record shows that the trial court initially denied the prosecutor's request for joint trials on January 5, 2012, but it reversed this ruling about a week later on January 12, 2012. See Dkts. 11-5, and 11-7.

constituted, at most, a felonious assault. This was not a concession of a guilt, but an argument made in the alternative to minimize Petitioner's culpability. It does not follow that counsel was ineffective for not requesting a jury instruction on felonious assault. The Michigan Court of Appeals specifically found that such an instruction was not warranted under state law. *Young*, 2014 WL 3745186, at *10. In analyzing an ineffective assistance of counsel claim, an expression of state law by the state court is binding on this Court. *See Basile v. Bowersox*, 125 F. Supp. 2d 930, 960 (E.D. Mo. 1999). *See generally, Estelle v. McGuire*, 502 U.S. 62, 67-68 (1991). Thus, any motion for the instruction by counsel would have been futile. Counsel cannot be deemed ineffective for failing to raise a meritless objection. *See Bradley v. Birkett*, 192 Fed. Appx. 468, 475 (6th Cir. 2006). Counsel's decision to make an alternative argument minimizing Petitioner's culpability is the type of tactical decision that *Strickland* cautions a reviewing court from second-guessing.

Petitioner's ineffective assistance of counsel claims were reasonably adjudicated by the state courts. Therefore, they do not provide a basis for granting habeas relief.

D. Prosecutorial Misconduct (Habeas Claim III)

Petitioner raises several claims of prosecutorial misconduct. He argues that the conduct of the prosecutor rendered his trial fundamentally unfair where the prosecutor: (1) referred to Petitioner's request to be provided "school clothes" for trial, (2) vouched for the credibility of witness Darneil Richardson, (3) argued facts not in evidence, and (4) appealed to the jury's sense of civic duty. Petitioner also asserts that his counsel was ineffective for failing to object to the misconduct.

To be entitled to habeas relief on a prosecutorial misconduct claim, the petitioner must show that the prosecutor's conduct so infected the trial so as to render the conviction

fundamentally unfair. *Parker v. Matthews*, 132 S. Ct. 2148, 2153 (2012); *Gillard v. Mitchell*, 445 F.3d 883, 897 (6th Cir. 2006) (citing *Donnelly v. DeChristoforo*, 416 U.S. 637, 643 (1974)). If the misconduct was harmless, then as a matter of law, there was no due-process violation. See *Greer v. Miller*, 483 U.S. 756, 765 & n.7 (1987). In federal habeas, this means asking whether the error "had substantial and injurious effect or influence in determining the jury's verdict." *Brecht v. Abrahamson*, 507 U.S. 619, 623, 637-38 (1993) (quoting *Kotteakos v. United States*, 328 U.S. 750, 776 (1946)); see also *Fry v. Pliler*, 551 U.S. 112, 121-22 (2007).

Petitioner first claims that it was improper for the prosecutor to reference the clothing Petitioner's requested to wear at trial. The Michigan Court of Appeals rejected the claim as follows:

> In this case, defendant Young's claim of due process error fails because it is not predicated on any governmental compulsion or even defendant Young's actual attire at trial. Importantly, the prosecutor did not argue that there was anything wrong or deceptive about wearing ordinary civilian clothing. The prosecutor, instead, argued that defendant Young's specific request for "school clothing" was intended to create a false impression of himself in order to deceive the jury into thinking that he was a student.
>
> Considered in context, we cannot conclude that these comments deprived defendant Young of a fair trial. The prosecutor was not commenting on defendant Young's right to wear ordinary civilian clothing at trial. Regardless, because a curative instruction would have alleviated any prejudice, defendant is not entitled to any relief.

*Young*, 2014 WL 3745186, at *8.

This decision was not unreasonable. As noted by the state appellate court, this is not a case where the state compelled the defendant to wear prison garb. Nor is this a situation where the prosecutor commented on the clothes actually worn by Petitioner at trial. Rather, the prosecutor made reference to the fact that Petitioner requested to wear school clothing despite the

fact he was not a student. The inference the prosecutor wished to draw was that Petitioner was attempting to deceive the jury. No Supreme Court case prohibits a prosecutor from attacking the credibility of the defense by asserting that the defendant was attempting to create a false impression through his appearance at trial. Thus, the decision of the state court could not have involved an unreasonable application of clearly established Supreme Court law.

Petitioner next asserts that the prosecutor vouched for the credibility of Darneil Richardson. "Improper vouching occurs when a prosecutor supports the credibility of a witness by indicating a personal belief in the witness's credibility . . ." *Johnson v. Bell*, 525 F.3d 466, 482 (6th Cir. 2008) (quoting *United States v. Francis*, 170 F.3d 546, 550 (6th Cir. 1999)). The prosecutor stated: "You've had a chance to hear all of the evidence at this point and I submit to you that Darneil Richardson is telling the truth to you about what happened to him that day." Dkt. 11-14, at 58. The prosecutor did not express a personal belief in the witnesses's credibility, but urged the jury to accept his testimony based on "all of the evidence" presented. This claim is without merit.

Petitioner next argues that the prosecutor argued facts that were not based on the evidence presented at trial. During closing argument the prosecutor stated that Petitioner was 5'8" "or he's taller than me." Dkt. 11-14, at 60-61. A prosecution witness, Barbara Ingram, testified that the second gunman was "taller than me. I'm 5'5", so they taller than me and slender." Dkt. 11-12, at 66. This was the testimony the prosecutor was referring to in the challenged part of the closing argument. The complained-of passage begins with the prosecutor stating, "We look at what Barabara Ingram says. . ." Dkt. 11-14, at 60. The error was slight in that the prosecutor referred to Ingram's height as 5'8" instead of 5'5". It was not objectively unreasonable for the Michigan Court of Appeals to find that this minor and isolated misstatement

of the evidence did not render Petitioner's trial fundamentally unfair. The claim is without merit.

Finally, Petitioner complains that the prosecutor appealed to the jury's sense of civic duty. Petitioner argues that the prosecutor impermissibly referred to the witnesses' fears and motives for testifying. The complained-of comments came in the rebuttal argument after defense counsel argued that a prosecution witnesses might be protecting a cousin or her own safety because Richardson was still seen around her neighborhood. Such an "invited response" by the prosecutor is appropriate if, after weighing the impact of the prosecutor's remarks against the initial remarks of defense counsel, the prosecutor did no more than "respond substantially in order to 'right the scale.'" See *United States v. Young*, 470 U.S. 1, 11-13 (1985) (noting courts have "refused to reverse convictions where prosecutors have responded reasonably in closing argument to defense counsel's attacks, thus rendering it unlikely that the jury was led astray."); see also *United States v. Dalton*, 574 Fed. App'x 639, 645 (6th Cir. 2014) (noting that the court must weight the prosecutor's statements against defense counsel's statements to determine whether the prosecutor acted improperly). When taken in context with defense counsel's argument that the witness was testifying untruthfully to protect a relative or out of fear of Richardson, the prosecutor's statements on rebuttal were not reversibly flagrant. It was not objectively unreasonable for the Michigan Court of Appeals to reject this claim in light of defense counsel's argument.

Petitioner's follow-on argument that his trial attorney was ineffective for failing to object to the misconduct of the prosecutor fails because the underlying claims are without merit. See, e.g., *Bradley*, 192 Fed. Appx. at 475.

E. Right to Cross Examine Witnesses (Habeas Claim V)

Petitioner asserts that his rights under the Confrontation Clause were violated when the

trial court prevented him from impeaching a prosecution witness with inconsistent statements she made to police.

The Sixth Amendment guarantees the right of an accused in a state criminal prosecution "to be confronted with the witnesses against him." U.S. Const. amend. VI; see also *Pointer v. Texas*, 380 U.S. 400, 407-08 (1965). Cross-examination is a "primary interest secured" by the Confrontation Clause. *Douglas v. Alabama*, 380 U.S. 415, 418 (1965); see also *Davis v. Alaska*, 415 U.S. 308, 315-16 (1974). However, trial judges retain wide latitude insofar as the Confrontation Clause is concerned to impose reasonable limits on such cross-examination based on concerns about, among other things, . . . interrogation that is repetitive or only marginally relevant. . . . [T]he Confrontation Clause guarantees an opportunity for effective cross-examination, not cross-examination that is effective in whatever way, and to whatever extent, the defense might wish." *Delaware v. Van Arsdall*, 475 U.S. 673, 679 (1986) (quoting *Delaware v. Fensterer*, 474 U.S. 15, 20 (1985) (per curiam); see also *Davis*, 415 U.S. at 316 ("Cross-examination is . . . [s]ubject always to the broad discretion of a trial judge to preclude repetitive and unduly harassing interrogation . . . .").

When "it is merely the extent of cross-examination that is limited, the trial judge retains a much wider latitude of discretion. Once cross examination reveals sufficient information to appraise the witness' veracity, confrontation demands are satisfied." *Boggs v. Collins*, 226 F.3d 728, 736 (6th Cir. 2000) (quoting *Dorsey v. Parke*, 872 F.2d 163, 167 (6th Cir. 1989)) (internal quotation marks omitted). Thus, "[w]here the trial court limits the extent of cross-examination, the inquiry for the reviewing court is 'whether the jury had enough information, despite the limits placed on otherwise permitted cross-examination, to assess the defense theory.'" *Stewart v. Wolfenbarger*, 468 F.3d 338, 347 (6th Cir. 2007) (quoting *Dorsey*, 872 F.2d at 167).

Petitioner's claim seems to be based on an extrapolation from the wording of her counsel's cross examination of the police officer who took a statement from Ingram. The officer testified that Ingram "indicated . . . . someone other than Mr. Young produced a weapon and pointed [it] at the victim. . . ." Dkt. 11-13, at 111-12. An objection on hearsay grounds to this question was sustained. Id. After the officer finished testifying, Petitioner's trial counsel moved to recall Ingram, who had already testified, to ask her "five questions" for impeachment purposes about identifying someone other than Petitioner as the second gunman. Dkt. 11-13, at 116–17. Defense counsel indicated that Ingram's trial testimony was contradicted by a police report of her interview, in that Ingram told police that someone other than Petitioner pulled out a gun and "pointed it at Antonio." Id., at 117–18. The trial court denied the motion. Id., at 122.

Petitioner's confrontation rights were not denied by the trial court's decision to prohibit Petitioner from recalling Ingram. The record shows that Petitioner had a full and fair opportunity to cross-examine Ingram when she first testified, which included impeaching her based on her preliminary examination testimony. See Dkt. 11-12, at 69-73. Furthermore, Ingram never identified Petitioner as one of the shooters, either in her statements to police or at trial. See Dkt., 11-12, at 56-58, 65-66; Dkt. 11-13, at 120. Nor did she identify a third-party to police who was not Petitioner as the second assailant. Id., at 120, 122. The reference in the police statement to "Bubba" was not to an unidentified third-party, but to co-defendant Craig. Compare Dkt. 11-12, at 49-50, and Dkt. 11-13, at 120. Accordingly, despite the fact Petitioner was prevented from recalling Ingram, the jury had enough information after Ingram's direct examination and cross examination testimony to assess the defense theory. Petitioner's confrontation rights were therefore not violated, and the claim is without merit.

As none of Petitioner's claim merit relief, the petition will be denied.

IV. Certificate of Appealability

Federal Rule of Appellate Procedure 22 provides that an appeal may not proceed unless a certificate of appealability is issued under 28 U.S.C. § 2253. Rule 11 of the Rules Governing Section 2254 Proceedings, which was amended as of December 1, 2009, requires that a district court must "issue or deny a certificate of appealability when it enters a final order adverse to the applicant. . . . If the court issues a certificate, the court must state the specific issue or issues that satisfy the showing required by 28 U.S.C. § 2253(c)(2)." Rule 11, Rules Governing Section 2254 Proceedings. A certificate of appealability may issue "only if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). Courts must either issue a certificate of appealability indicating which issues satisfy the required showing or provide reasons why such a certificate should not issue. 28 U.S.C. § 2253(c)(3); Fed. R. App. P. 22(b); *In re Certificates of Appealability*, 106 F.3d 1306, 1307 (6th Cir. 1997).

To receive a certificate of appealability, "a petitioner must show that reasonable jurists could debate whether (or, for that matter, agree that) the petition should have been resolved in a different manner or that the issues presented were adequate to deserve encouragement to proceed further." *Miller-El v. Cockrell*, 537 U.S. 322, 336 (2003) (internal quotes and citations omitted). Here, jurists of reason would not debate the Court's conclusion that Petitioner has not met the standard for a certificate of appealability because his claims are completely devoid of merit. Therefore, the Court denies a certificate of appealability.

The Court will also deny permission to appeal in forma pauperis because any appeal of this decision could not be taken in good faith. 28 U.S.C. § 1915(a)(3).

V. Conclusion

Accordingly, the Court 1) **DENIES WITH PREJUDICE** the petition for a writ of habeas corpus, 2) **DENIES** Petitioner's motion to stay, 3) **DENIES** a certificate of appealability, and 3) **DENIES** permission to appeal in forma pauperis.

**SO ORDERED.**

                                                 _s/ Bernard A. Friedman_____
                                                 Honorable Bernard A. Friedman
Dated: May 12, 2017                            United States District Judge